May it please the court, will you co-penny for the appellant, Rose Ray? Co-penny? Yes, Your Honor. All right. I thought you already had a question for me. No, no, I just, when I read your name, I thought, is it co-penny? So I just wanted to say it right. Thank you very much, Your Honor. The principal problem with the sentencing in this case, from the appellant's point of view, is the way the district court viewed its own role vis-a-vis an attempt to make restitution. In this case, there was an offer to loan the defendant over $2 million on the eve of sentencing for the purpose of repaying the victims. The person that was making the loan, offering to make the loan, came to court, witnessed the victim's testimony, understood the financial matters involved, because she was well educated and was a person that was experienced in financial matters and investment, and she was fully aware of the victims and what they had suffered as a result of the defendant's crime. But the district judge and the government to some extent seemed to approach the offer of a loan to the defendant for the purpose of making more than 50 percent restitution payment within 30 days of the sentencing as a matter that was subject to the approval of the government or the district court. But wasn't there a condition on this loan? The condition, as I understood it, was that Ms. Ray would be free to work at least during the day at this business. That was the defense. Because the loan? Pardon me. Right? Your Honor, I apologize. I think I spoke over the part of the question. Yeah. Wasn't that a condition for the loan? Your Honor, the defense presented the loan in the format of if there's a way that the sentence can be structured that would allow the defendant to work this business that was collateralizing the loan, then the loan would be coming forward. But I understand that she wouldn't give the loan unless Ms. Ray was there at the store working, helping to manage the store, because she was a key part of the success of the store. I think that's right. I think the lender relied on Ms. Ray's ability at making that business work and profitable. Right. Then didn't that make this an issue for the court? See, I would agree with you in general that the court probably shouldn't interfere with the ability of a defendant to borrow money to pay restitution. But in this case, the borrowing was dependent on the court structuring the sentence so that Ms. Ray would be out of jail at least during the day. Well, Your Honor. And the court, given the seriousness of the crime, the court was unwilling to do that. What's wrong with that? What's wrong with that is that the judge didn't just reject the loan but considered it an aggravating factor, called it an attempt to negotiate justice, and increased the sentence over the recommendation of the government, the probation officer, and the defense, and also exceeded the maximum guideline in the – under the circumstances of the case. But you would agree, wouldn't you? I just want to make sure that whatever the district court did approved or disapproved the loan. It isn't a matter that the court was approving or disapproving. Whatever it did would approve or disapprove. Your Honor, it would, but the way the court – That's all I'm trying to – you're going on further now, which is what your argument is, and I just want to make sure that we're not struck – we're not stopped at approving or disapproving the loan because the court did talk about that, but in fact the whole sentence approved or disapproved the loan. If they go to jail for a long time and can't get out, that disapproves it. If they don't, they approve it. Your Honor, it could very well be that that's the case, and it looks to me like that is what the lender was intending. And the – so I think if I correctly answer your question, the judge wasn't leaving to the consequence of his sentence the approval or disapproval of the loan. The judge was explicitly saying, I can't countenance this unconscionable loan, and I'm going to consider that an aggravating factor. So, yes – Where did he say that it was an aggravating factor? He said it was unconscionable, and I – Yes, but where did he say that it was an aggravating factor, and because of that, I'm going to jack up the sentence? Your Honor, he repeatedly said – with respect, he repeatedly said, I will not countenance negotiating an attempt by the judge. Well, where is it – where is it in the record that he said, I'm going to jack up the sentence because of that? That's what you're saying. I read the transcript, and I didn't see him say that. Your Honor, I think it's almost impossible to read this transcript without reaching the conclusion that that was the principal reason the judge exceeded the sentence. He gave four other reasons, none of which would be legally cognizable as reasons to give a higher sentence. He said there were many other people involved, but they were unknowing. And so he called that a managerial role, but even the government didn't argue that there was anybody else who was being managed. In other words, it wasn't a correct guidelines analysis to give a higher sentence based on people who the judge said were unknowing participants in the crime. He said that the victims were persuaded by the defendant not to report the crime. And although neither the probation department nor the government argued there was any obstruction, the judge characterized or countenanced that as obstruction. The judge focused a lot on the fact that this loan was being offered and that it was an attempt to negotiate justice. And the judge clearly rejected that idea in the ruling prior to the sentencing hearing, saying, you know, the set continuance is denied. I won't countenance an attempt to negotiate justice for a loan like an unconscionable loan, and then went forward with the sentencing. And it just seems to permeate the entire reasoning of the district court. Kennedy. You're not suggesting the court didn't talk about any of the other 3553A factors, are you? Your Honor, I put them in my brief. I listed them in my brief. And I'm – and what I'm suggesting is that – and then I looked at an analysis of each of them as to why those are not likely appropriate considerations given that they really don't meet the guideline tests for those kinds of factors. It isn't a 3553A factor to say there were five other, three, four, five, or six, because the judge had no evidence of whether or how many, other unknowing participants in the crime, and that's a reason to aggravate. Or the defendant tried to persuade the victims not to – not to testify or go to the courtroom, and that's a reason to aggravate. And I'm not suggesting that the judge gleaned from hearing them talk, but not that there was any evidence of actually that happening. In other words, the judge was listing a bunch of other things, but that doesn't mean it's an appropriate recitation of personal history and characteristics or the nature of the crime when the judge was very upset about, or at least articulated about, and the judge explicitly said he wasn't angry, and I don't think this Court is going to disagree with what the judge said about his own opinion, but – Well, frankly, we have to read what he says and determine if what he says really looks at all the 3553A factors and if restitution is one of those factors. That's what we have to do. And we have to give discretion to him if he does that, because it isn't procedural error. He did also say that the ability of the defendant to pay restitution is not something that could be considered by the court. And I quoted that from the transcript. It's on page 121 of the appendix, the appellant's appendix, which is a part of the sentencing transcript. And he was clearly talking about restitution and, in my opinion, explaining why he wasn't going to consider this loan, but – which I think alone is an error and which I think is the principal basis for our appeal here. But – Are we really looking at plain error here, Counselor? Well, Your Honor, I don't think the defense failed to object to the judge's refusal to consider this. Well, where did they object to that? Your Honor, I quoted it in my reply brief. I know where you quoted it, but that didn't seem to me that that was the – that was what was needed. Is that the best you've got? Your Honor, that's the best we've got, but I think that it was really – Then I'm – then I'm satisfied with what I need to do. Sure. The court can characterize that as plain error or not if that's the – if that is the court's interpretation of the defendant's objection. But let's not forget that that sentencing hearing was opened with the defense counsel saying, I'm really sorry, Your Honor, you seem to be angry at us for trying to put this loan on. And the judge then saying, oh, no, I'm not angry at all, and then going on through a further discussion about that loan. And I think defense counsel clearly articulated his position that an attempt to make restitution or to negotiate a loan which is not a fraudulent loan is a mitigating factor. And I think there's something else to consider, and that is even if the judge, by his sentence, was disapproving the loan, that didn't mean that the defendant's effort to make restitution shouldn't have been considered a positive rather than a negative factor. And this judge clearly said he thought it was a negative factor by saying, I'm not going to allow you to try to negotiate justice. I think I have 40 seconds, and I'll try to answer more questions, but I'd like to be clear. That's okay. You can save the balance of your time. Thank you. We'll give you a minute on rebuttal. Good morning, Your Honors. May it please the Court. Carrie O'Neill on behalf of the United States. The main question on appeal is whether the district court committed a clear error of judgment in the sentence it reached upon weighing the relevant factors, in particular 18 U.S.C. section 3553A7, the need for restitution. It did not. Now, as this Court and the Supreme Court have made clear, a district court cannot increase a defendant's sentence because of their inability to pay restitution. As a corollary principle, this Court has also stated post-Booker that a district court may consider a defendant's ability to pay restitution in deciding whether to impose a more lenient sentence. Defendant's briefs appear to argue that both principles were violated in this case. Again, not so. First, as counsel just attempted to do, defendant tries to cast her case as one in which the district court actually aggravated or increased her sentence because of her attempts at making restitution. But in order to do this, the defendant has to argue, essentially, that everything the district court said was a lie, that even though it said it, it was not actually treating the defendant's attempts at getting the Beckett loan as mitigating. This is clearly contrary to the record, and it's not in accordance with the deferential standard of review that this Court employs. Now, defense counsel relies heavily on some pre-sentencing statements that the district court made in its minute order, but at ER 77, at the outset of the sentencing hearing, the district court said, I'm not at all angry or offended. And then essentially, and I'm paraphrasing, I assume that this was undertaken in good faith. Then at ER 123 through 26, the Court says, I can take into account as a mitigating factor defendant's attempts, efforts to try to pay you back. At ER 132 through 33, I do want to take it into account, but I don't want to give it undue weight. And then, and there are several other instances in the record that I won't repeat, but then at ER 149, shortly before the Court imposed sentence, defense counsel said, essentially, I see, Your Honor, you are not considering this as a factor that would affect her jail sentence. And the district court said, I actually do think it's a factor. I just don't feel comfortable saying she's not going to have a term of imprisonment because of the potential to pay some of the restitution. That was a fair analysis in light of all the other 3553A factors here. That's at ER 77, right? ER 77 is when the district court says, I'm not angry or offended. This loan, I am assuming it to be undertaken in good faith. I do think it's a factor. What I'm saying is, I can't, I don't feel comfortable, Mr. Ritted, saying that she's not going to have a term of imprisonment because of the potential to pay some restitution. That's correct, Your Honor. That's at ER 149. And then defendant also seems to argue, well, fine. Let's say the district court didn't aggravate her sentence because of these attempts. Well, the district court didn't consider the attempts at restitution at all as mitigating. But again, it's clearly belied by the record. And what's her proof of this? Her proof of this is that she offered this attempt at restitution, and her analysis is that the district court must have rejected that as a mitigating factor because it refused to grant her zero jail time. But that's not the analysis. That's not how it works. Just because a defendant offers a mitigating factor doesn't mean that in order for the district court to show that it's considering it as a mitigating factor, it has to give the exact sentence the defendant wants. And here, that sentence was zero jail time. And this is a defendant who had three prior fraud-based cases. So the judge did vary upward from the guideline range. He did, Your Honor. So what – just go over with me. What factors did he rely on? Yes, Your Honor. In addition to the underlying factual basis for the guidelines. Yes, Your Honor. The Court was very clear at ER 135 through 36 about the aggravating factors it was relying on, including the defendant's criminal history, for which there were two uncounted convictions from 1977 and 1987, misapplication of Federal credit union funds and felony grand theft. And those two convictions were uncounted and therefore not encaptured by the guideline calculation. And they also bore on what the district court described as a real pattern of recidivism that this defendant was showing throughout her life. Then the district court relied on her managing of unwitting middlemen in her scheme. This firmly established in the record. In fact, defendant herself in her sentencing papers named by name each one of these seven individuals. The government has put that forth in their brief and in their sealed excerpts of record. The government named them. And then the court named them himself by name. And the defense counsel is correct that the government didn't argue for a role enhancement under the guidelines because it couldn't prove the criminal culpability of these individuals. But, A, that just goes to show that this management was not captured by the guidelines. And, B, it's well within the discretion of the district court to find this to be an aggravating factor. Defendant was the only one running this Ponzi scheme. She employed seven people, took advantage of them essentially to go out and do her dirty work and recruit other investors for her. I mean, in just two years, this defendant got 190 investors and $11 million. How? She relied on these seven unwitting middlemen. And some of them spoke and addressed the court at sentencing and spoke about how horrible they felt that they had been sort of engaged by a defendant to sort of unknowingly go out into the community. And then that bears as well on a further aggravating factor, which was the psychological impact on these victims. Sure, the guidelines account for financial loss. That's how you become a victim under the guidelines. But what it doesn't account for is the psychological destruction that these victims suffered. And as became clear at ER 81 through 108, I believe, when the victim spoke to the court, nine of them, she targeted some of these individuals because of their heritage, because of their Latino heritage. She knew that, you know, they didn't have a safety net underneath them. And so when that money was pulled out from underneath them, they suffered depression, they had to start taking medications, hospitalization. And so the district court was very attuned to the victims' needs and also the pain and suffering that they felt, which is not accounted for in the guidelines. And then lastly, there were references in the record to some threats and obstructions that the defendant made. Government didn't ask for an enhancement, but they can be considered by the district court. There's no rule saying that they can't be. Okay. Does the Court have any further questions? That was my understanding. Basically, I mean, I think you quickly captured all the bases that the Court relied upon to enhance the very upward from the guideline range. Right. A moderate upward enhancement. Yes. I think it was 10 levels or something. Ten months. Ten months. Yes. Thank you, Your Honors. And as I understand it, really, the argument about the management role is really relevant, because the district court neither applied it nor used it against it. In its guidelines calculation, that's correct. In its 3553A. In the very end, though, it did note that. It did note it, yes, as a Booker factor. Right. Okay. Well, if there are no further questions, I'll sit down. Thank you, Your Honors. Thank you. I think I have a minute or something. You've given me a few extra seconds. Just at page 123 of the excerpt of record, the district judge said, in the context of talking about restitution, we've gotten rid of debtor's prison in this country and so the ability of a person to pay does not play a role in to what the appropriate sentence is. And it seems to me that that was the judge's reaction to the defense argument that this woman is going to be able to pay a significant percentage of the money that was the loss back if she's permitted to make restitution. And the judge really didn't take that into consideration, notwithstanding the quotes that counsel drew from the record. But I also would like to just indicate that if the court looks at pages 135 to 136, which were just referred to by counsel, each of those four factors, Your Honor, Judge Smith, you said that the managing role was irrelevant. Well, I don't think the managing role was irrelevant. If a judge says, I could never give you a guidelines enhancement because of a management role, but I can give you a variance up because there were other people who didn't know that they were involved in the crime, it almost stands the principle of what is and isn't aggravating or mitigating on its head to say that, well, if you had help and people didn't know they were helping you commit a crime. That's just another way of saying that the guidelines are binding. No, it's not saying that. And that's clearly not proper. Your Honor, it would be improper to say the guidelines are binding. That's what you're saying, is he can't point to anything. But if he's doing a Booker analysis to impose a role enhancement under the guidelines, then he sure can't do it under the 3553A factors when he's doing a Booker analysis. Your Honor, what I'm saying is that if the guidelines say that a certain kind of conduct is not enhancing, then it isn't fair game to say, but I'm going to find it enhancing anyway. And I mean, this is not the case. I don't find that argument particularly attractive in this day and age of sentencing, where the whole purpose of Booker was to give the district court judges substantial discretion in trying to fix a sentence to fit the defendant and the circumstances of the crime, the defendant's background and everything else. And this judge went through and pointed to some factors that appear to be entirely proper to decide to vary upward by 10 months from the guideline range. Well, Your Honor, I think that I don't want to take more time. I've already used it, but I think I make the point that I think is appropriate at page 1243. Okay. Fair enough. Thank you very much. Fair enough. Thank you. Thank you. The matter is submitted at this time. I really appreciate your arguments, counsel.
judges: Paez, Smith, Hurwitz